UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LEAH KRAVOCHUCK,             )      Case No. 1:09CV199
                             )
          Petitioner,        )      JUDGE DONALD C. NUGENT
                             )      Magistrate Judge George J. Limbert
     vs.                     )
                             )
FRANK SHEWALTER, Warden,     )      **REPORT AND RECOMMENDATION**
                             )      **OF MAGISTRATE JUDGE**
          Respondent.        )


On January 28, 2009, Leah Kravochuck ("Petitioner"), through counsel, filed a petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner is a prisoner

at the Northeast Pre-Release Center seeking relief from her Cuyahoga County Court of Common

Pleas conviction for aggravated vehicular homicide, bribery and driving under the influence of

drugs or alcohol.  *Id.*  On January 29, 2009, this case was assigned to the undersigned for a

Report and Recommendation.  On March 31, 2009, Frank Shewalter ("Respondent") filed a

return of writ.  ECF Dkt. #5.  On May 28, 2009, Petitioner, through counsel, filed a traverse.

ECF Dkt. #8.  For the following reasons, the undersigned recommends that the Court DENY

Petitioner's federal habeas corpus petition and dismiss it with prejudice.

I.    **FACTUAL AND PROCEDURAL HISTORY**

     A.    **State Trial Court Proceedings**

     On March 3, 2004, the Cuyahoga County, Ohio Grand Jury issued an indictment

charging Petitioner with: murder in violation of Ohio Revised Code § 2903.02, felony murder in

violation of Ohio Revised Code § 2903.02, two counts of felonious assault in violation of Ohio

Revised Code § 2903.11, two counts of aggravated vehicular homicide in violation of Ohio

Revised Code § 2903.06, driving under the influence of alcohol or drugs in violation of Ohio

Revised Code

§ 4511.19, and bribery in violation of Ohio Revised Code § 2921.02.  ECF Dkt. #5-15, Exhibit 1.

On July 28, 2004, Petitioner, with counsel, entered into a plea agreement whereby she plead guilty to: aggravated vehicular homicide, a second degree felony; driving under the influence of drugs or alcohol, a third degree felony; and bribery, a first degree misdemeanor. ECF Dkt. #5-15, Exhibit 2.  On July 29, 2004, the Cuyahoga County Common Pleas Court issued a judgment entry accepting the guilty plea.  *Id.*

On September 13, 2004, the trial court sentenced Petitioner to eight years of imprisonment on the aggravated vehicular homicide conviction with a three-year consecutive term for the bribery, finding that Petitioner committed the worst form of the offense on the aggravated vehicular homicide and consecutive sentences were necessary in order to protect the public and punish the offender.  The court further found that the sentences were not disproportionate as Petitioner had served prior prison time, she had four previous driving under the influence convictions, and she continued to use alcohol and cocaine.  ECF Dkt. #5-15, Exhibit 3.  The judge also ordered that Petitioner serve six months of concurrent incarceration on the driving under the influence conviction, serve the maximum period allowable for post-release control, and he suspended her driver's license for life.  *Id.*

**B.** **First Direct Appeal**

On September 16, 2004, Petitioner, through counsel, filed a notice of appeal in the Eighth District Court of Appeals for Ohio and raised the following assignments of error in her appellate brief:

> I.. The trial court erred in sentencing Appellant to more than the minimum prison sentence.
>
> II. The trial court erred by ordering Appellant to serve a consecutive sentence without making the appropriate findings required by R.C. § 2929.14(e)(4).
>
> III. The trial court erred when it sentenced Appellant to maximum sentence without making the appropriate findings.

ECF Dkt. #5-16, Exhibit 5.  On July 5, 2005, the Eighth District Court of Appeals affirmed Petitioner's conviction and sentence.  ECF Dkt. #5-16, Exhibit 7.

C.      On August 17, 2005, Petitioner, through counsel, filed a notice of appeal to the

Ohio Supreme Court.  ECF Dkt. #5-16, Exhibit 8.  In her memorandum in support of

jurisdiction, Petitioner raised the following proposition of law:

> 1.      A trial court that imposes a non-minimum, maximum, or consecutive
> sentence by using factors which are not found by a jury or admitted by the
> defendant violates the defendant's rights to due process and a jury trial
> under the Fifth, Sixth, and Fourteenth Amendments to the United States
> Constitution.

ECF Dkt. #5-16, Exhibit 9.

On November 23, 2005, the Supreme Court of Ohio accepted the appeal and *sua sponte*

held the cause in abeyance and stayed briefing pending the decisions in *State v. Quinones*,

Supreme Court Case Number 04-1771 and *State v. Foster*, Supreme Court Case Number 04-

1568.  ECF Dkt. #5-16, Exhibit 11.

On May 3, 2006, the Supreme Court of Ohio reversed the appellate court decision in

Petitioner's case and remanded her case for resentencing consistent with *State v. Foster*, 845

N.E.2d 470 (Ohio 2006).  ECF Dkt. #5-16, Exhibit 12.

### C.      Second Trial Court Adjudication

On December 28, 2006, the trial court issued a journal entry indicating that it held a

resentencing hearing.  ECF Dkt. #5-16, Exhibit 13.  The trial court sentenced Petitioner to the

same sentence that it had previously imposed, which included eleven years of imprisonment,

post-release control and a driver's license suspension for life.  *Id.*

### D.      Second Direct Appeal

On January 12, 2007, Petitioner, through counsel, filed a notice of appeal to the Eighth

District Court of Appeals and presented the following assignments of error in her memorandum

in support:

> 1.      The trial court erred by ordering Appellant to serve a consecutive sentence
> without making the appropriate findings required by R.C. § 2929.14(e)(4).

> 2.      The trial court erred when it sentenced Appellant to the maximum
> sentence without making the appropriate findings.

ECF Dkt. #5-16, Exhibits 14, 15.  On December 10, 2007, the appellate court affirmed the trial

court's judgment.  ECF Dkt. #5-16, Exhibit 17.

On January 24, 2008, Petitioner, through counsel, filed a notice of appeal in the Supreme Court of Ohio.  ECF Dkt. #5-16, Exhibit 18.  Petitioner filed a memorandum in support of jurisdiction raising the following propositions of law:

> 1.  Under *Hicks v. Oklahoma* (1980), 447 U.S. 343, 100 S.Ct. 2227, the remedy devised in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, violated the Due Process Clauses of the Ohio and United States Constitutions by depriving the Defendant of a vested right without due process of law.
>
> 2.  A trial court's re-sentencing a defendant to maximum and consecutive prison terms under *State v. Foster*, 109 Ohio.St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, violates the defendant's rights guaranteed by the Sixth Amendment to the United States Constitution.  *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531; *United States v. Booker* (2005), 543 U.S. 220, 125 S.Ct. 738.
>
> 3.  Because re-sentencing under *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, retroactively subjects a defendant to a "statutory maximum sentence" that greatly exceeds the maximum sentence the defendant was subject to when the alleged offenses were committed, *Foster* violates the Due Process Clauses of the Ohio and United States Constitutions.

ECF Dkt. #5-16, Exhibit 19.

On April 23, 2008, the Supreme Court of Ohio summarily dismissed Petitioner's appeal as not involving any substantial constitutional question.  ECF Dkt. #5-16, Exhibit 20.

### E.  Federal Habeas Corpus Petition

On January 28, 2009, Petitioner, through counsel, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner presents one ground for relief:

> The remedy that the Ohio Supreme Court set forth in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), violates the Due Process Clause of the United States Constitution.
>
> Supporting Facts:
> In 2004, Petitioner Leah Kravochuck pleaded guilty to one second-degree felony count of aggravated vehicular homicide, one third-degree felony count of bribery, and to one misdemeanor count of driving under the influence.  At the sentencing hearing, the trial court ordered Petitioner to serve the maximum sentence of eight-years imprisonment on the aggravated vehicular homicide charge, three-years imprisonment on the

-4-

bribery charge, and six-months imprisonment for the misdemeanor charge. The trial court ordered that the sentences for the two felony counts be served consecutively to one another but concurrently to the sentence imposed for the misdemeanor charge.

On July 5, 2005, the state appellate court affirmed Petitioner's conviction and sentence. Ms. Kravochuck appealed that judgment to the Ohio Supreme Court. On February 27, 2006, while Ms. Kravochuck's case was pending, the Ohio Supreme Court decided that portions of Ohio's felony sentencing statutes violated the Sixth Amendment to the United States Constitution. In order to remedy the constitutional violations, the court severed the portions of the statutes that were declared to be unconstitutional. Ohio Revised Code Sections 2929.14(B), 2929.14(C), and 2929.14(E)(4) were among the sections that were determined to be unconstitutional and therefore severed. *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (Ohio Sup.Ct. 2006).

Revised Code Section 2929.14(B) previously stated that a minimum sentence must have been imposed unless a finding was made that the defendant previously served a prison term or that "the shortest prison term w[ould] demean the seriousness of the offender's conduct or w[ould] not adequately protect the public from future crime by the offender or others." Ohio Rev. Code Ann. § 2929.14(B). With some exceptions not relevant to this case, a maximum sentence was permitted to be imposed only when the trial court found that the defendant committed the worst form of the offense, or that he or she posed the greatest likelihood of committing future crimes. Ohio Rev. Code Ann. § 2929.14(C).

In accordance with its decision in *State v. Foster*, the Ohio Supreme Court reversed and remanded Ms. Kravochuck's case for re-sentencing. On December 21, 2006, the trial court re-sentenced Ms. Kravochuck to the maximum sentence of eight-years imprisonment on the aggravated vehicular homicide charge, three-years imprisonment on the bribery charge, and to six-months imprisonment for the misdemeanor charge. However, during Ms. Kravochuck's re-sentencing hearing, the trial court was required to sentence her under the Senate Bill 2 provisions that were in effect at the time of his[sic] purported crimes. Therefore, any sentence imposed in re-sentencing that included maximum prison terms violated the Due Process Clause of the United States Constitution.

ECF Dkt. #1-2 at 1-2. On January 29, 2009, this case was assigned to the undersigned for a

Report and Recommendation. On March 31, 2009, Respondent filed a return of writ. ECF Dkt.

#5. On May 28, 2009, Petitioner, through counsel, filed a traverse which appears to raise an

additional ground for relief. ECF Dkt. #8.

## II.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the

merits of a petition for a federal writ of habeas corpus. As Justice O'Connor noted in *Daniels v.*

*United States*, "Procedural barriers, such as statutes of limitations and rules concerning

procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

Respondent raises no procedural barriers to the review of Petitioner's federal habeas corpus petition.  Accordingly, the undersigned sets forth the standard for reviewing the merits of Petitioner's grounds for relief.

**III**.   **STANDARD OF REVIEW**

The AEDPA governs this Court's review of the instant case because Petitioner filed her petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 28, 2009, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if she is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
>> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

    A.    Decisions of lower federal courts may not be considered.

    B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

    C.    The state court decision may be overturned only if:

        1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,'[existing at the time of the petitioner's direct appeal] or;

        2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

        3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

    D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.     Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV.    ANALYSIS

Petitioner alleges in her Petition that the remedy that the Ohio Supreme Court set forth in *Foster* violates the Due Process Clause of the United States Constitution. ECF Dkt. #1-2 at 1. In her Traverse, Petitioner additionally contends that the state courts' application of the Ohio

-8-

Supreme Court's remedy in *Foster* contravenes both the Due Process and the Ex Post Facto Clauses of the United States Constitution.  ECF Dkt. #8 at 4.   Petitioner also asserts in her Traverse that the Ohio Supreme Court's remedy in *Foster* is not analogous to the United States Supreme Court's resolution in *United State v. Booker*, 543 U.S. 220 (2005).  She further argues that the Ohio Supreme Court unconstitutionally foreclosed appellate review by eliminating the presumptive sentencing levels contained within the severed statutes and the judicial factfinding that attended the imposition of sentences exceeding the presumptive range.  ECF Dkt. #8 at 9.

> **A.**    **PERTINENT LAW**

Prior to Petitioner's sentencing, the United States Supreme Court decided *Apprendi* and held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  *Apprendi*, 530 U.S. at 490.  The Supreme Court thereafter decided *Blakely* and held that the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, and not the maximum sentence a judge may impose after finding additional facts. *Blakely*, 542 U.S. at 303.

At the time Petitioner was convicted, the Ohio Revised Code allowed for a sentence of 2-8 years for felonies of the second degree and 1-5 years for felonies of the third degree.  O.R.C. §§ 2929.14(A)(2), (A)(3).  However, the Revised Code further provided that:

> (B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
>
>> (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
>>
>> (2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

-9-

O.R.C. § 2929.14(B) (West 2004).   On February 27, 2006, the Supreme Court of Ohio consolidated four criminal cases in an opinion styled *State v. Foster* and held, *inter alia*, that R.C. § 2929.14(B) was unconstitutional because it "require[d] judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant." *Foster*, 845 N.E.2d at 495.  The Supreme Court of Ohio went on to remedy the error by severing the unconstitutional mandatory judicial factfinding provisions:

> [R]eferences to mandatory judicial fact-finding properly may be eliminated in the four areas of concern. Without the mandatory judicial fact-finding, there is nothing to suggest a "presumptive term." To explain Ohio's "statutory maximum" for purposes of *Apprendi* and its progeny, the maximum prison term authorized by the jury verdict or the facts admitted by a defendant upon acceptance of a plea is the top of the sentencing range for the crime of which the defendant is convicted. For example, if the offender is convicted of a first-degree felony, the "statutory maximum" is ten years under R.C. 2929.14(A)(1).

*Id*. at 497.

### i.    Application of *Foster* to Petitioner's case

In Petitioner's case there are two potential sentencing errors: (1) whether the trial judge on remand from the Supreme Court of Ohio could impose a sentence of eight years for the second degree felony conviction; and (2) whether the trial judge on remand from the Supreme Court of Ohio could impose consecutive sentences for Petitioner's convictions of aggravated vehicular homicide and bribery.  Petitioner contends that she should have been sentenced only to concurrent, minimum sentences for each offense. ECF Dkt. #8 at 8.  For the purposes of analyzing the instant case, it is crucial to understand the difference between the available sentence that a judge could impose for a given crime at the time of Petitioner's conviction ("Ohio Statutory Maximum") and the statutory maximum for *Apprendi* purposes ("*Apprendi* Statutory Maximum") because they were not the same prior to *Foster*.

### ii.    Statutory Maximums in Ohio.

Again, the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant, and not the maximum sentence a judge may impose after finding additional facts.

*Blakely*, 542 U.S. at 303.  It is not simply the maximum sentence that a sentencing statute authorizes.  Prior to *Foster*, the Ohio Statutory Maximum was eight years for a felony of the second degree, but that sentence could only be imposed if the trial judge made findings of fact pursuant to R.C. § 2929.14(C).  Further, R.C. § 2929.14(B) imposed a presumptive minimum sentence that required judicial factfinding in order to be overridden.  The Supreme Court of Ohio acknowledged this result *in Foster:*

> **Under R.C. 2929.14(B), therefore, a court is not authorized to exceed the shortest prison term unless it makes the additional findings.** *State v. Edmonson* (1999), 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (findings required, reasons not); *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473 (findings required for first offender).  Since a jury verdict alone does not determine the sentence, R.C. 2929.14(B) violates *Blakely* principles. . . Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional.

*Foster*, 845 N.E.2d at 490, 494 (emphasis added).  Therefore, due to the presumptive minimum in place by R.C. § 2929.14(B), the *Apprendi* Statutory Maximum was actually the Ohio Statutory *Minimum* sentence.

The alleged sentencing disparity for the eight-year second degree felony sentence imposed by the trial court in this case following *Foster* is six years because the *Apprendi* Statutory Maximum before *Foster* was two years.  The alleged sentencing disparity for the three-year third degree felony sentence imposed by the trial court in this case following *Foster* is two years because the *Apprendi* Statutory Maximum before *Foster* was one year.  The ultimate issue, therefore, is whether the trial court properly cured its initial sentencing error by resentencing Petitioner under the severed sentencing statutes following *Foster*.

## B.   DUE PROCESS

The undersigned recommends that the Court find that there was no violation pertaining to the principle felony sentences that the trial court imposed on remand (*i.e.*, the eight-year term and the three-year term).  Petitioner contends that the *Foster* court's retroactive application of the severed sentencing statute violates various constitutional rights.  Petitioner contends that: the

remedy adopted in *Foster* was not analogous to that utilized in *Booker*; *Foster* operates as an unforeseeable judicial enlargement of Ohio's statutes in violation of ex post facto laws; and that the post-*Foster* imposition of consecutive sentences without consistency, proportionality or reasons stated by the judge, violates the Sixth Amendment and the ex post facto and due process clauses. ECF Dkt. #8 at 12. Finally, Petitioner argues that the *Foster* Court's severing of presumptive sentencing and judicial factfinding effectively foreclosed appellate review. *Id.*

First, the undersigned recommends that the Court reject Petitioner's argument that *Foster* contravenes *Booker* and that the severance scheme in Foster essentially forecloses appellate review because she has failed to establish that *Foster* is inconsistent with *Booker* or *Blakely* or that she was denied due process by the retroactive application of *Foster*. Petitioner relies on *Miller v. Florida*, 482 U.S. 423 (1987) for support, but *Miller* predates *Apprendi* and its progeny. Moreover, the undersigned believes that *Cunningham v. California*, 549 U.S. 270 (2007) is much more persuasive because it is a more recent case and deals specifically with resentencing following a *Blakely* violation and modification of Sixth Amendment violative sentencing statutes. On the other hand, *Miller* dealt with retroactive legislation and a violation of the Ex Post Facto Clause. Further, the *Cunningham* case demonstrates that a court can retroactively permit judges to exercise broad judicial discretion and sentence with a full statutory range.

In *Cunningham*, a defendant was convicted of continuous sexual abuse of a child and sentenced under California's determinate sentencing law ("DSL"), which provided a lower term sentence of 6 years, a middle term sentence of 12 years, or an upper term sentence of 16 years. 549 U.S. at 276. The DSL obliged the trial judge to sentence Cunningham to the 12-year middle term unless the judge found one or more additional "circumstances in aggravation." *Id.* The Supreme Court held that "our decisions from *Apprendi* to *Booker* point to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum. Because the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent." *Id.* at 293. The *Cunningham* Court stated:

> As to the adjustment of California's sentencing system in light of our decision, "[t]he ball ... lies in [California's] court."  *Booker*, 543 U.S., at 265, 125 S.Ct. 738 . . .**Other States have chosen to permit judges genuinely "to exercise broad discretion ... within a statutory range,"  California may follow the paths taken by its sister States or otherwise alter its system, so long as the State observes Sixth Amendment limitations declared in this Court's decisions**. . . the case is remanded for further proceedings not inconsistent with this opinion.

*Id.* at 294.  The *Cunningham* Court clearly stated that on remand in that particular case, the state court could permit the judge to exercise discretion within a broad range.  This is precisely what the *Foster* court did by severing the mandatory factfinding provisions from Ohio's sentencing statutes.

The Court can analogize *Foster* to *Cunningham* because trial judges were mandated to impose a certain default sentence under the sentencing statutes in place in each state at the time– in *Cunningham* the middle term, and in *Foster* the Ohio Statutory Minimum.  Prior to *Cunningham*, a California trial judge under the DSL had to make factual findings pertaining to mitigation or aggravation.  The *Cunningham* Court held that the DSL violated a defendant's Sixth Amendment rights because it imposed a mandatory presumptive sentence and mandatory judicial factfinding.  *See Cunningham*, 549 U.S. at 290-291.  On remand from the United States Supreme Court, it is clear that California could resentence Mr. Cunningham to at least the middle DSL term, if not the maximum DSL term, because the *Cunningham* Court explicitly stated that the statutory maximum for *Apprendi* purposes was the middle DSL term.  If Petitioner's argument in the instant case were to be valid and a court could not retroactively modify its sentencing statute to change judicial factfinding requirements in the way the *Foster* court did, then the *Cunningham* Court would have directed California to sentence Mr. Cunningham to the lowest DSL term.  Otherwise, the *Cunningham* Court would have been endorsing a presumptive sentence (the middle DSL) that was improperly imposed.  The Court, however, left California with much more discretion than that by allowing California to permit the judge to exercise discretion within a broad range.  On remand, the *Cunningham* Court clearly allowed California to remove a presumption in order to impose a sentence that had been unconstitutional due to that presumption.  In short, under the *Cunningham* Court's remand order,

-13-

the California trial court could impose a sentence on remand that was initially unconstitutional. The *Foster* severance remedy is consistent with the holding in *Cunningham* because it eliminated presumptive sentencing and mandatory judicial factfinding and because it permitted judges to exercise discretion within a broad statutory range.

The *Cunningham* case also indicates that the severance remedy adopted in *Booker* was an appropriate remedy for the *Foster* court to use because "there was no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue in [*Blakely*]. Both systems were mandatory and impose[d] binding requirements on all sentencing judges." *Cunningham*, 549 U.S. at 285.

This Court also found in *Torres v. Beightler* that while *Foster's* severance scheme was not identical to that in *Booker*, the former nevertheless did not rise to the level of a constitutional violation.  No. 1:09CV191, 2009 WL 2705880, at *9-10 (N.D. Ohio, Aug. 27, 2009).  The *Torres* Court quoted *Garrett v. Warden*, 2009 WL 1416047 (S.D. Ohio 2009), which held:

> Whenever a court applies a severance remedy, its purported objective is to maintain as much of what the legislature adopted as is consistent with whatever constitutional provision is being applied. This always leaves the legislature free to act again, to say in effect, "That's not what we meant or wanted." With both *Booker* and *Foster,* many expected follow-on legislation, but none has come. But unless the statute without the excised portions itself falls below a constitutional minimum, no defendant is harmed. That is, no Ohio felon was constitutionally entitled to have the presumptions enacted in S.B.2 and no federal felon was constitutionally entitled to have a mandatory guideline regime.

*Torres*, 2009 WL 2705880, at *10, quoting 2009 WL 1416047, at *5.  The *Torres* Court noted that because "Torres has demonstrated only that *Foster's* severance scheme differs from *Booker's* severance scheme, not that *Foster's* approach was in violation of the Constitution, Torres fails to show that Ohio courts have unreasonably applied *Booker*."  2009 WL 2705880, at *10.  The Court should find the same way in the instant case since Petitioner makes the exact argument as Torres with regard to only addressing the *Foster* severance scheme.  ECF Dkt. #8 at 10-12.

-14-

For these reasons, the undersigned recommends that the Court reject Petitioner's assertions that the retroactive application of *Foster* violated her Due Process rights.

**C**.   **EX POST FACTO CLAUSE**

The undersigned notes that Petitioner appears to raise an additional argument in her traverse relating to the trial court violating the Ex Post Facto Clause of the United States Constitution when it retroactively applied the remedy articulated by the Ohio Supreme Court in *Foster* to her case upon resentencing.  ECF Dkt. #8 at 2, 4-8, 12.  Generally, a traverse is an improper document in which to raise new issues that were not raised in a petitioner's original petition for federal habeas corpus relief because it does not notify the State of the claim or allow the State an opportunity to oppose it.  *Taylor v. Mitchell*, 296 F.Supp.2d 784, 798 (N.D. Ohio 2003), citing *Cacoperdo v. Demonstenes*, 37 F.3d 504, 507 (9th Cir. 1994) and *Jack v. Randall*, No. C-2-99-947, 2000 WL 1456992 at *7 (S.D. Ohio June 20, 2000).  However, the undersigned shall address this subsequent issue because Respondent apparently anticipated such an assertion as it argues the issue in its Return of Writ.  ECF Dkt. #5 at 8.  Accordingly, notice is not an issue.       Nevertheless, the undersigned recommends that the Court reject Petitioner's assertion that the severance of some of the sentencing statutes and the retroactive application of the Ohio Supreme Court's remedy in *Foster* violate the Ex Post Facto Clause of the United States Constitution.  In *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001), the Supreme Court unequivocally stated that "As the text of the [Ex Post Facto] Clause makes clear, it is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government. . . We have observed, however, that limitations on ex post facto judicial decisionmaking are inherent in the notion of due process."

The *Foster* court itself viewed its opinion as an interpretation of statute and constitutional law, not as a legislative act:

> It may well be that in the future, the Ohio Criminal Sentencing Commission may recommend *Blakely*-compliant statutory modifications to the General Assembly that will counteract these, among other, concerns. Nevertheless, we are constrained by the principles of separation of powers and cannot rewrite the statutes.

-15-

*Foster*, 845 N.E.2d at 498.  Regardless of whether the *Foster* court was interpreting a statute or modifying it, Petitioner's claim, if she has one, appropriately lies in Due Process not the Ex Post Facto Clause.  *Rogers* makes clear that the pertinent question for determining whether a petitioner has a valid Ex Post Facto Clause claim is which branch of government committed the alleged constitutional violation.  Here, Petitioner alleges that the judicial branch violated her constitutional rights and therefore the undersigned concludes that she has no claim under the Ex Post Facto Clause. This Court made clear in *McGhee v. Konteh*, No. 1:07CV1408, 2008 WL 320763 (N.D. Ohio Feb. 1, 2008), unpublished, that if a law is improperly made retroactive by a court, a Petitioner's remedy, if she has one, lies in the Due Process Clause, not the Ex Post Facto Clause.  *McGhee*, 2008 WL 320763 at *9-*11.  The fact that the *Foster* court may have acted akin to the legislature does not make the Supreme Court of Ohio a legislature.  It remains true that "As the text of the [Ex Post Facto] Clause makes clear, it is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government." *Rogers*, 532 U.S. at 456.

Based upon *Rogers*, it is clear that Petitioner's reliance on *Miller* is misplaced.  *Miller* involved a legislative act that applied revised sentencing guidelines retroactively to Miller's sentence.  The undersigned acknowledges that judicial involvement existed in *Miller*, but this was insufficient to render the judicial branch's involvement alone an Ex Post Facto Clause violation.  In *Rogers*, the Court discussed  its decision in *Bouie v. City of Columbia*, 378 U.S. 347 (1964), in which it held that "[i]f a legislature is barred by the *Ex Post Facto Clause* from passing...a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction" and that "[a]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law."  378 U.S. at 353-354, 362.  However, the *Rogers* Court held that this language was dicta and *Bouie* and cases thereafter addressing *Bouie*-type claims were rooted firmly in due process notions of notice, foreseeability and the right to fair warning.  532 U.S. at 459.

Consequently, if the Supreme Court of Ohio improperly applied a criminal law retroactively, defendants maintain a remedy in the Due Process Clause of the Fourteenth

-16-

Amendment.  However, as this Court held in *McGhee* and more recently in *Torres v. Beightler*, No. 1:09 CV 191, 2009 WL 2705880 (N.D.Ohio, Aug. 27, 2009), unreported, that argument fails in a case such as this because Petitioner had ample notice that her conduct was criminal and ample notice of the potential penalties against her.  *McGhee*,  2008 WL 320763 at *10, n.1,2 ("In instances where a defendant was sentenced beyond the advisory guideline range following *Booker*, the Sixth Circuit has repeatedly rejected the argument that the retroactive application remedy of *Booker* violates the Due Process Clause and ex post facto-type due process concerns. *See United States v. Barton* FN1, 455 F.3d 649, 657 (2006); *United States v. Anderson* FN2, 187 Fed.App. 517, 2006 WL 1866348, 2006 Fed.App. 0455N (6th Cir. June 29, 2006)") (Footnote text omitted); *Torres*, 2009 WL 2705880 at *8:

> Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability to which the State ascribed to the act of murder.

quoting *U.S. v. Duncan*, 400 F.4d 1297, 1307-08 (11th Cir. 1977).

For these reasons, the undersigned recommends that the Court reject Petitioner's ground for relief stated in her traverse that the Ohio courts violated the Ex Post Facto Clause of the United States Constitution by interpreting and retroactive applying *Foster*.

**D.**   **CONSECUTIVE SENTENCING**

Next, the Court must address the issue of consecutive sentencing.  In *Oregon v. Ice*, 129 S.Ct. 711 ( 2009), the United States Supreme Court held that factual findings predicate for the imposition of consecutive sentences need not be proven beyond a reasonable doubt to a jury. ECF Dkt. #9 at 6.  Regardless, the *Oregon* Court makes it clear that no violation occurred in the instant case pertaining to Petitioner's consecutive sentences because the Court held that the Sixth Amendment does not inhibit States from assigning to judges, rather than to juries, finding of facts necessary to imposition of consecutive, rather than concurrent, sentences for multiple offenses.  *Id.*  at 714-15.

In *Oregon*, a man was convicted of sexually assaulting an 11-year old girl. *Id*. at 712 (syllabus). The defendant was convicted of first-degree burglary for entering with the intent to commit sexual abuse; first-degree sexual assault for touching the victim's vagina; and first-degree sexual assault for touching her breasts. *Id*. The pertinent Oregon statute allowed the judge to impose consecutive sentences in these circumstances: (1) when "a defendant is simultaneously sentenced for ... offenses that do not arise from the same ... course of conduct," § 137.123(2), and (2) when offenses arise from the same course of conduct, if the judge finds either "(a) [t]hat the ... offense ... was an indication of defendant's willingness to commit more than one criminal offense; or ... "(b) [t]he ... offense ... caused or created a risk of causing greater or qualitatively different ... harm to the victim," § 137.123(5). The trial judge first found that the two burglaries constituted separate incidents and imposed consecutive sentences for those crimes pursuant to Oregon Rev.Stat. § 137.123(2). *Id*. The judge found that each offense of touching the victim's vagina met Oregon Rev.Stat. § 137.123(5)'s two criteria, and he imposed the sentences for those offenses consecutive to the two associated burglary sentences. *Id*. Lastly, he ordered that the sentences for touching the victim's breasts run concurrently with the other sentences. *Id*.

> Justice Ginsburg, writing for the majority, held:

> Most States continue the common-law tradition: They entrust to judges' unfettered discretion the decision whether sentences for discrete offenses shall be served consecutively or concurrently. In some States, sentences for multiple offenses are presumed to run consecutively, but sentencing judges may order concurrent sentences upon finding cause therefor. Other States, including Oregon, constrain judges' discretion by requiring them to find certain facts before imposing consecutive, rather than concurrent, sentences. It is undisputed that States may proceed on the first two tracks without transgressing the Sixth Amendment. The sole issue in dispute, then, is whether the Sixth Amendment, as construed in *Apprendi* and *Blakely*, precludes the mode of proceeding chosen by Oregon and several of her sister States. We hold, in light of historical practice and the authority of States over administration of their criminal justice systems, that the Sixth Amendment does not exclude Oregon's choice.

*Ice*, 129 at 714-15. The *Ice* Court reasoned that the application of *Apprendi's* rule must honor the "longstanding common-law practice" in which the rule is rooted and court must consider whether the finding of a particular fact was understood as within "the domain of the jury ... by those who framed the Bill of Rights." *Id*. at 717. "In undertaking this inquiry, [the Supreme

-18-

Court] remain[s] cognizant that administration of a discrete criminal justice system is among the basic sovereign prerogatives States retain. . . The decision to impose sentences consecutively is not within the jury function that 'extends down centuries into the common law.' Instead, specification of the regime for administering multiple sentences has long been considered the prerogative of state legislatures." *Id*. quoting *Apprendi*, 530 U.S. at 477. The *Ice* Court went on to note that juries played no role in the decision to impose sentences consecutively or concurrently, and that decision rested exclusively with the judge. *Id*. The Court concluded that "In light of this history, legislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in *Apprendi*." *Id*.

Like the petitioner in *Ice*, Petitioner in this case received consecutive sentences for discrete crimes. Accordingly, *Ice* makes it clear that Petitioner's Sixth Amendment rights were not violated when the trial judge imposed consecutive sentences.

## V. **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned recommends that the Court find that Petitioner's claims lack merit. Accordingly, the undersigned further recommends that the Court dismiss the instant § 2254 federal habeas corpus petition in its entirety with prejudice.


Date: September 16, 2009                    */s/George J. Limbert*
                                            George J. Limbert
                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-19-